**John DOE,**

v.

**HARTFORD LIFE AND ACCIDENT INSURANCE CO.**

Civil Action No. 05–2512 (JLL).

United States District Court, D. New Jersey.

July 14, 2006.

Bonny G. Rafel, Esq., Bonny G. Rafel LLC, Livingston, NJ, for John Doe

Douglas E. Arpert, Esq., Norton, Arpert, Sheehy & Higgins, P.C., West Paterson, NJ, for Hartford Life and Accident Insurance Co.

## LETTER–OPINION AND ORDER

LINARES, District Judge.

Dear Counsel:

This matter comes before the Court on Plaintiff John Doe's ("Plaintiff") appeal of the January 5, 2006 Letter–Opinion and Order of the Honorable Magistrate Judge Ronald J. Hedges, U.S.M.J., denying Plaintiff's motion for reconsideration of the December 15, 2005 Letter–Opinion and Order denying Plaintiff's application to use the fictitious name, "John Doe" in his pleadings. Although Defendant Hartford Life Insurance Company ("Defendant") did not oppose Plaintiff's original application to Magistrate Judge Hedges and the motion for reconsideration, Defendant

does oppose the present appeal. This appeal is resolved without oral argument. Fed. R.Civ.P. 78. For the reasons stated herein, Magistrate Judge Hedges' Letter Opinion and Order is REVERSED.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

As the Court writes only for the parties, a familiarity with the underlying facts in this case will be assumed. Plaintiff suffers from bipolar disorder and brings this action against Defendant, an insurance company, for wrongful denial of long term disability ("LTD") benefits pursuant to § 502 of the Employee Retirement Income Security Act ("ERISA"). On December 15, 2005, Magistrate Judge Ronald J. Hedges denied Plaintiff's motion to proceed in the litigation under a pseudonym based largely on public interest concerns rooted in the First Amendment's right of public access to judicial proceedings. (Hedges' Op. Dec. 15, 2005 ("Dec. 15 Op.")). Plaintiff brought a motion for reconsideration on January 5, 2006 which was denied. (Hedges' Op. Jan. 5, 2005 ("Jan. 5 Op.")). Plaintiff now appeals Magistrate Judge Hedges' decisions and requests that the Court grant his motion to proceed under a fictitious name, arguing that Magistrate Judge Hedges' applied the wrong legal standard and failed to consider the factual circumstances supporting the use of a pseudonym. Plaintiff continues to rely on his original affidavit submitted to Magistrate Judge Hedges and the letter of his doctor, David Printz, MD.[1] Plaintiff asserts that being forced to litigate under his real name would: (1) stigmatize him in the community, (2) cause him to suffer tremendous anxiety, (3) potentially worsen his medical condition and (4) potentially ruin any prospects of returning to work in the future. (Rafel Cert., Ex. D, Pl. Aff. ¶ 1).

Plaintiff has been under clinical care for treatment of his bipolar disorder for several years. According to his treating physician, he suffers from a treatment-resistant, severe condition, and as a result, experiences intense anxiety coupled with chronic and disabling symptoms that occur on a daily basis.

(Rafel Cert., Ex. C). On several occasions, Plaintiff has experienced embarrassment and a difference of treatment from others who have learned of his medical condition and, as a result, has conscientiously worked to keep his illness confidential; limiting knowledge of its existence to close family, friends and his medical care providers. (Rafel Cert., Ex. D, Pl. Aff. ¶ 2). Plaintiff is especially worried about the damage that might result to his professional career as an attorney if knowledge of his medical condition, and the constant anxiety and obsessiveness he battles, became public knowledge. (*Id.*). Plaintiff further argues that by publishing his name, his medical condition will be made worse since he will be constantly obsessing over each new person he meets wondering if they know about his disease. (Rafel Cert., Ex. D, Pl. Aff. ¶ 5).

For these reasons, Plaintiff seeks relief in the form of a reversal of Magistrate Judge Hedges' Opinions, thereby allowing the use of a pseudonym in this litigation.

## LEGAL STANDARD

■ A United States Magistrate Judge may hear and determine any [non-dispositive] pretrial matter pending before the Court pursuant to 28 U.S.C. § 636(b)(1)(A). The district court will only reverse a magistrate judge's decision on these matters if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a); L. Civ. R. 72.1(c)(1)(A). Therefore, "this Court will review a magistrate judge's findings of fact for clear error." *Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery,* 177 F.R.D. 205, 213 (D.N.J.1997) (citing *Lo Bosco v. Kure Eng'g Ltd.,* 891 F.Supp. 1035, 1037 (D.N.J.1995)). Under this standard, a finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (citing *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). The district court

---

1. Dr. Printz is the Director of the Bipolar Disor-   der Research Clinic at Columbia University.

will not reverse the magistrate judge's determination, even in circumstances where the court might have decided the matter differently. *Bowen v. Parking Auth. of City of Camden*, 2002 WL 1754493, at *3 (D.N.J. July 30, 2002). "A district judge's simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review." *Andrews v. Goodyear Tire & Rubber Co., Inc.*, 191 F.R.D. 59, 68 (D.N.J.2000).

■ In matters where the magistrate judge is authorized to exercise his or her discretion, the decision will be reversed only for an abuse of discretion. *Kresefky v. Panasonic Communications & Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J.1996) ("Where, as here, the magistrate has ruled on a non-dispositive matter such as a discovery motion, his or her ruling is entitled to great deference and is reversible only for abuse of discretion"). "This deferential standard is 'especially appropriate where the Magistrate Judge has managed this case from the outset and developed a thorough knowledge of the proceedings.'" *Lithuanian Commerce Corp.*, 177 F.R.D. at 214 (quoting *Pub. Interest Research Group v. Hercules, Inc.*, 830 F.Supp. 1525, 1547 (D.N.J.1993), *aff'd on other grounds and rev'd on other grounds*, 50 F.3d 1239 (3d Cir.1995)).

■ However, a magistrate judge's legal conclusions on a non-dispositive motion will be reviewed *de novo*. *See Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91 (3d Cir.1992); *Lo Bosco*, 891 F.Supp. at 1037. A ruling is "contrary to law" when the magistrate judge has misinterpreted or misapplied the applicable law. *Pharmaceutical Sales & Consulting Corp. v. J.W.S. Delavau Co., Inc.*, 106 F.Supp.2d 761, 764 (D.N.J.2000).

In light of this framework, the Court turns to Defendant's appeal of Magistrate Judge Hedges' January 5 Letter–Opinion and Order.

## DISCUSSION

■ It is within a district court's discretion to determine when a party may proceed anonymously. Therefore, this Court will apply the *de novo* standard of review to Magistrate Judge Hedges' interpretation and application of the applicable law, and will apply the abuse of discretion standard to his factual analysis and conclusions. As the parties readily admit, the Third Circuit has not specifically addressed the present issue—under what circumstances may a plaintiff proceed through a case using a pseudonym.

Here, the Court is presented with a civil action by a plaintiff alleging an extreme case of bipolar disorder. Plaintiff asserts on appeal that Magistrate Judge Hedges applied not only an incorrect legal standard, but also ignored factual circumstances that support the use of a pseudonym. According to Plaintiff, Magistrate Judge Hedges should have considered a relevant case from the Eastern District of Pennsylvania, *James Doe v. Provident Life & Accident Ins. Co.*, 176 F.R.D. 464 (E.D.Pa.1997), or given a reason for disregarding the case and the factors it set forth, and also erroneously relied on the Sedona Conference Guidelines.[2] Had Magistrate Judge Hedges analyzed the nine factors set forth in *Provident Life*, he allegedly would have concluded that the circumstances of this case support pseudonymity. Plaintiff also contends that Magistrate Judge Hedges' determination, that the circumstances of this case do not warrant the use of a pseudonym, is clearly erroneous because the weight of the evidence clearly establishes a strong privacy interest on behalf of Plaintiff that outweighs any public interest in access to his identity. Plaintiff points to the fact that Magistrate Judge Hedges did not analyze—in either of his two opinions—the circumstances of Plaintiff's condition in denying his motion for pseudonymity even though the certifications provided by Plaintiff and his doctor, Dr. Printz, provide substantial evidence to support a finding that Plaintiff's need for anonymity outweighs the public's interest in knowing his identity.

2. R.J. Hedges & K.J. Withers, *The Sedona Guidelines: Best Practices Addressing Protective Orders, Confidentiality & Public Access in Civil Cases*, Ch.1, p. 2 (revised public comment draft Apr. 2005), http://www.thesedonaconference.org/content/miscFiles/ publications—html?grp= wgs120.

While Defendant did not oppose Plaintiff's initial application, in opposition to this appeal Defendant argues that Magistrate Judge Hedges' decision was neither clearly erroneous or contrary to law, and the factual circumstances set forth by Plaintiff do not justify use of a pseudonym.

█ The Court recognizes the policy implications set forth by Magistrate Judge Hedges, and has reviewed the Sedona Guidelines, however a survey of the practice used by other circuits demonstrates a consistent trend towards the use of a balancing of the equities-type test, where the strong interest in ensuring public access to judicial proceedings is balanced against the private interests favoring anonymity. *See, e.g., Does I thru XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1072 (9th Cir.2000) (applying a balancing test to determine if the need for anonymity outweighs the public's right to access); *M.M. v. Zavaras,* 139 F.3d 798, 803 (10th Cir.1998) (same); *James v. Jacobson,* 6 F.3d 233, 238 (4th Cir.1993) (same); *Doe v. Frank,* 951 F.2d 320, 323 (11th Cir.1992) (same); *Doe v. Stegall,* 653 F.2d 180, 185 (5th Cir. 1981) (same). In addition, many courts have recognized pseudonym use in mental health cases. *See Doe v. Colautti,* 592 F.2d 704, 705 (3d Cir.1979); *Doe v. Blue Cross & Blue Shield United of Wis.,* 112 F.3d 869, 872 (7th Cir.1997); *Doe v. Harris,* 495 F.Supp. 1161 (S.D.N.Y.1980); *Doe v. Gallinot,* 486 F.Supp. 983 (C.D.Cal.1979); *Doe v. New York Univ.,* 442 F.Supp. 522 (S.D.N.Y.1978).

In Magistrate Judge Hedges' discussion of the Sedona Guidelines, he inadvertently cites to *In re Cendant Corp.,* 260 F.3d 183, 192 (3d Cir.2001), for the proposition that the presumption of public access extends to the use of fictitious names; when the actual case cited in the Sedona Guidelines for that proposition is *Doe v. City of Chicago,* 360 F.3d 667, 669–70 (7th Cir.2004).[3] *City of Chicago* states that "the presumption that parties' identities are public information ... can be rebutted by showing that the harm to the plaintiff ... exceeds the likely harm from concealment." *Id.* at 669. Furthermore, the

Seventh Circuit stated in dicta that a judge ruling on a motion to use a pseudonym has an independent duty to determine whether exceptional circumstances justify a departure from the normal method of proceeding in federal courts—the failure to do so on the part of a judge is a clear error. *Id.* In addition, of the cases cited above in support of a balancing test, four of them—*Zavaras, Frank, Advanced Textile,* and *Stegall*—were cited in the *City of Chicago* case.

Similarly, as Plaintiff points out, a judge in the Eastern District of Pennsylvania, recently adopted a balancing of factors test in determining whether a pseudonym should be used. *Doe v. Provident Life & Accident Ins. Co.,* 176 F.R.D. 464 (E.D.Pa.1997).

In *Provident Life,* the district court articulated that the public's right to access should always prevail unless the party requesting anonymity " 'demonstrates ... interests in privacy or security [sufficient to] justify pseudonymity.' " *Id.* at 467 (quoting Joan Steinman, *Public Trial, Pseudonymous Parties: When Should Litigants Be Permitted to Keep Their Identities Confidential?,* 37 Hastings L.J. 1, 37 (1985)). Factors weighing in favor of pseudonymity include:

(1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.

*Id.* at 467–68. Similarly, as the court explained, factors which would weigh against the use of a pseudonym are the following:

---

**3.** *In re Cendant Corp.,* dealt with sealing of court documents which is notably different from allowing a litigant to proceed under a fictitious name,

since the court proceedings and records will nonetheless be open for public inspection.

(1) the universal level of public interest in access to the identities of litigants; (2) whether, because of the subject matter of the litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and (3) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

*Id.* at 468.

■ Given the foregoing case law that weighs in favor of a multi-factored balancing test, this Court concludes that the magistrate judge should have undertaken such an analysis. Therefore, applying the factors enunciated by the Eastern District of Pennsylvania to the situation at hand, the Court determines that the Plaintiff's interest in remaining anonymous clearly outweighs the public's interest in the information.

First, before this litigation commenced, Plaintiff conscientiously kept his illness confidential from his coworkers and colleagues for fear of their reactions and has only revealed his condition to a few close friends, family and his medical providers.

Second, Plaintiff bases his desire to keep his real name confidential on prior life experiences he has had that have resulted in embarrassment and anxiety that have occurred when others have learned that he is bipolar. Similarly, Plaintiff's condition appears to be severe, and he has articulated concerns that disclosure of his real name will aggravate his condition and result in greater anxiety and stress—concerns that have been substantiated by his doctor, Dr. Printz. Furthermore, a risk of stigmatization is possible if Plaintiff comes out as a bipolar sufferer both in Plaintiff's community and in his career. There is also a risk of stigmatization in Plaintiff's professional life as a lawyer. Most of Plaintiff's coworkers and customers are attorneys who may arguably follow this case and there is a theoretical possibility that their awareness of his illness will result in damage to his professional reputation.

Third, there is substantial public interest in ensuring that cases like the Plaintiff's are adjudicated and the rights of mental illness sufferers are represented fairly and without the risk of stigmatization. However, this goal can not be achieved if litigants suffering from mental illness are chilled from ever reaching the courthouse steps for fear of repercussions that would ensue if their condition was made public. Although any litigant runs the risk of public embarrassment by bringing their case and revealing sensitive facts in a public courtroom, the situation here is vastly different because Plaintiff's bipolar condition is directly tied to the subject matter of the litigation—his mental illness and the disability benefits he allegedly is entitled to as a mental illness sufferer. In this case, Plaintiff's situation is analogous to a woman seeking an abortion or a homosexual fired from his job because of his sexual orientation. *See, e.g., Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (holding that a woman denied an abortion was entitled to proceed under pseudonym); *Doe v. Commonwealth's Attorney for City of Richmond*, 403 F.Supp. 1199 (E.D.Va.1975), *aff'd*, 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976) (permitting a homosexual to proceed under a pseudonym in challenging state sodomy law). Like those litigants, Plaintiff is faced with circumstances that society may not yet understand or accept and his condition is directly tied to the issues before the Court.

Fourth, allowing Plaintiff to proceed under a pseudonym will not interfere with the public's right to follow the proceedings. The proceedings will be kept open to the public while maintaining the confidentiality of Plaintiff's identity.

Fifth, if this Court denies Plaintiff's motion, there exists the possibility that he might not pursue his claim due to the stigmatization that may result in his community and to his professional career. This would preclude the adjudication of a possibly meritorious claim that is ripe and ready for judicial review and frustrate the goal of judicial economy since future litigation will be wasted on an issue that is presently ready for adjudication. Lastly, Plaintiff has no illegal or ulterior motives in keeping his identity confidential, but merely seeks to protect his repu-

tation and not aggravate his medical condition.

In addition, the factors militating against the use of a pseudonym are weak in comparison to the factors supporting its use. The only factor against Plaintiff's use of a pseudonym is the public's general interest in having access to the identity of litigants. However, this interest exists in some respect in all litigation and does not outweigh the strength of the factors in favor of Plaintiff's use of a pseudonym. The issue in this case is primarily a legal one—whether Plaintiff's private interest in anonymity outweighs the presumption of openness in judicial proceedings—and does not turn on the identity of the Plaintiff.[4] Secondly, Plaintiff is not a public figure which would strengthen the public's interest in knowing his identity. Finally, opposing counsel does not object to Plaintiff's proceeding under a pseudonym and offers no evidence that doing so would in any way prejudice or create an undue hardship since the parties are well aware of Plaintiff's identity.

### *CONCLUSION*

For the reasons set forth above, it is on this 14th day of July, 2006,

**ORDERED** that Plaintiff's appeal [# 16] is GRANTED; and it is further

**ORDERED** that Magistrate Judge Hedges' Order dated January 5, 2006 is hereby **REVERSED;** and it is further

**ORDERED** that Plaintiff is allowed to proceed in pseudonym and the docket shall continue to reflect Plaintiff's name as James Doe; and it is further

**ORDERED** that Plaintiff will be referred to as James Doe in all depositions, pleadings and other documents related to this litigation, and the plaintiff shall be allowed to endorse documents related to this litigation using the pseudonym, James Doe; and it is further

**ORDERED** that in all proceedings held before this Court, including trial, all counsel, witnesses and court personnel present shall refer to plaintiff by his pseudonym, James Doe; and it is further

**ORDERED** that, despite the broad scope of this Order, should the parties desire to file a document with the Court under seal that an appropriate motion, pursuant to L. Civ. R. 5.3, must be made in advance of the filing; and it is further

**ORDERED** that the terms of this Order shall remain in effect until further Order of this Court.

---

4. In addressing this narrow inquiry, the Court in no way addresses the merits of Plaintiff's claim against Defendant. The determinations made herein extend only to the question of Plaintiff's right to proceed under a pseudonym and go no further.